# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**WILKIS BAYARD,**

**Petitioner,**

**v.** **Case No. 6:26-cv-2717-JA-RMN**

**NORMAN S. BRADLEY, GARRETT J. RIPA, DAVID J. VENTURELLA, MARKWAYNE MULLIN, and TODD BLANCHE,**

**Respondents.**

---

## ORDER

Petitioner Wilkis Bayard filed an emergency motion seeking to temporarily restrain Respondents from removing him from the United States. (Doc. 2). For the reasons explained, the petition is granted in part and denied in part.

## I. Background

Mr. Wilkis Bayard is a Haitian citizen who has been living in the United States for more than twenty-seven years. (*Id.* at 2). He entered the United States with his mother in June 1999, when he was seven years old. (*Id.* at 3). On March 6, 2001, an immigration judge denied Mr. Bayard's mother's asylum application and ordered the family removed. (*Id.*). Mr. Bayard's mother appealed, and it was denied by the Board of Immigration Appeals. (*Id.*). The

filings by Mr. Bayard and the Respondents are in conflict regarding when that denial was issued. (*Compare* Doc. 1 ¶ 10, *with* Doc. 7 at 1). In any event, on October 9, 2008, Immigration and Customs Enforcement (ICE) released Mr. Bayard on an Order of Supervision. (*Id.*). The procedural history between the denial of Mr. Bayard's mother's appeal and Mr. Bayard's release is not included in the record. On July 17, 2013, ICE issued a new order of supervision requiring in-person reporting. (*Id.*). Mr. Bayard alleges to have complied with all terms of his release, attending every appointment ICE has scheduled since 2008. (Doc. 1 at 4).

On June 3, 2025, ICE arrested Mr. Bayard pursuant to a Form I-200 warrant for "removal proceedings" and released him on the same day to continued supervision. (*Id.* at 4). On September 2, 2026, Mr. Bayard reported to ICE's Enforcement and Removal Operations (ERO) in Orlando per the terms of his supervision. (Doc. 2 at 4). The officer who handled his check-in reviewed his file, including his pending immigration applications, and directed Mr. Bayard to return in six months. (*Id.*). But another officer intervened during the check-in and ordered Mr. Bayard to return to ICE ERO Orlando on September 8, 2026, with travel arrangements to depart the United States on or before September 11, 2026. (*Id.*). Mr. Bayard was not given notice that his Order of Supervision had been revoked, was not given a reason for the apparent revocation, and was

not given an informal interview or other opportunity to respond to the revocation. (*Id.*).

Mr. Bayard returned to ICE ERO Orlando on September 8, 2026, with the travel arrangements ICE had demanded. (*Id.*). He also brought medical records documenting his wife's high-risk pregnancy and scheduled cesarean delivery. (*Id.*). On September 10, 2026, ICE emailed Mr. Bayard, informing him that he did not have to depart. (*Id.*). In the email, ICE directed Mr. Bayard to report on September 18, 2026, to ICE ERO Orlando with an update on his wife's pregnancy. (*Id.*). Sometime in September, ICE placed an ankle monitor on Mr. Bayard under its Intense Supervision Appearance Program. (Doc. 1 at 6). They also directed Mr. Bayard to report to ICE ERO Orlando every four weeks. (*Id.*).

On October 14, 2026, Mr. Bayard reported to ICE ERO Orlando as directed. (Doc. 2 at 5). At that time, he was instructed to report again on November 13, 2026, with travel arrangements to depart the United States on or before November 21, 2026. (Doc. 1 at 7). He once again had not received notice that his Order of Supervision was revoked, was not given a reason for the apparent revocation, and was not given interview or opportunity to respond. (Doc. 2 at 5).

On November 20, 2026, Mr. Bayard filed an Emergency Motion for Temporary Restraining Order (TRO), requesting several remedies, including temporarily enjoining Respondents from removing him. (Doc. 2 at 12). The

United States Attorney has appeared and filed a Notice of Pendency of Other Actions describing activity in Mr. Bayard's immigration file. (Doc. 7)

## II. Applicable Standards

For the Court to issue a TRO, the movant must sufficiently establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

The Court is authorized to issue a TRO without notice to the adverse party when: (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1).

## III. Analysis

As a threshold matter, Mr. Bayard has fulfilled the procedural requirements for a temporary restraining order to be issued under Rule 65(b)(1). He has shown that immediate and irreparable injury may result before the adverse party has an opportunity to be heard—Mr. Bayard may be deported from the United States as early as tomorrow, November 21, 2026. The Motion

for a TRO was filed on November 20, 2026, and Mr. Bayard's counsel sent a contemporaneous notice of the motion via email to the ICE ERO Orlando Sub-Office, the ICE Office of the Principal Legal Advisor, and the Office of the United States Attorney for the Middle District of Florida, Orlando Division. (Doc. 2 at 14). That fulfills the requirements of Rule 65(b)(1)(A).

**A. The Court has jurisdiction over the habeas petition.**

Mr. Bayard brings this case under 28 U.S.C. § 2241. Though he is not currently physically detained, the conditions of his Order of Supervision impose significant restraints on his freedom. (*See* Doc. 1 at 5–6). Those restraints include frequent in-person reports to ICE ERO Orlando and a requirement to wear an ankle monitor at all times under ICE's Intense Supervision Appearance Program. (*Id.*). The limitations imposed on Mr. Bayard's freedoms under the Order of Supervision are enough to place him in "custody" of ICE within the meaning of the habeas statute. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (concluding that a paroled petitioner was "in custody" within the meaning of 28 U.S.C. § 2241 because of the liberty limitations imposed by the conditions of his parole).

**B. There is a likelihood of success on the merits of the petition.**

After reviewing the habeas petition and corresponding record, the Court finds that Mr. Bayard has shown a substantial likelihood of success on the

merits of his petition. He alleges that Respondents intend to detain and remove him from the United States on November 21, 2026. (Doc. 2 at 9). That decision appears to have been made by Respondents without providing Mr. Bayard with notice of their decision to revoke his Order of Supervision, without providing Mr. Bayard any reasons behind the apparent revocation, and without providing Mr. Bayard an opportunity to respond to the revocation through an informal interview. Though Respondents have the authority to detain noncitizens with final orders of removal, they are required to follow applicable regulations when doing so. *See Bardales Sosa v. Bradley*, No. 6:26-cv-1998-JSS-CAB, Dkt. 5 (M.D. Fla. Sept. 10, 2026), and *Doval v. ICE*, No. 3:26-cv-247-JEP-SJH, slip op. at 7–9 (M.D. Fla. Apr. 29, 2026). Mr. Bayard alleges that Respondents have not followed applicable regulations in his case.

An Order of Supervision may be revoked when, in the discretion of the revoking official: "(i) [t]he purposes of release have been served; (ii) [t]he alien violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). However, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release." *Id.* § 241.13(l)(1). And "[t]he alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an

opportunity to respond to the reasons for revocation stated in the notification." *Id.* Mr. Bayard attests that Respondents have failed to adhere to these regulations—Mr. Bayard has not received a notice of revocation, has not been provided the reasons behind the revocation, and has not been provided an informal interview to respond to the reasons for revoking his Order of Supervision.

"It is a rather 'unremarkable proposition that an agency must abide by its own regulations.'" *Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1255 (S.D. Fla. 2025) (quoting *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979)). Here, the relevant regulation implicates critical due process rights—namely, the rights to notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond."). Because Mr. Bayard has never received a notice that his Order of Supervision was revoked, he has never received an opportunity to "respond to the reasons for revocation stated in the notification [of revocation]" as required by 8 C.F.R. § 241.4(l)(1). That deprivation of procedural due process makes it likely that Mr. Bayard has a meritorious due process claim. *See United States ex rel. v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927) ("Deportation without a fair hearing or on charges unsupported by any evidence is a denial of due process which may

be corrected on habeas corpus." (*citing Chin Yow v. United States*, 208 U.S. 8 (1908)).

### C. There is a likelihood of irreparable injury in the absence of relief.

Mr. Bayard will suffer immediate and irreparable damage before Respondents can be heard if the TRO is not granted. Mr. Bayard is facing imminent deportation, and his removal from this jurisdiction could effectively render his petition moot. *See Mehmood v. United States Attorney General*, 808 F. App'x 911, 913 (11th Cir. 2020). In his petition, Mr. Bayard requests declaratory and injunctive relief to require Respondents' compliance with applicable federal regulations under the Due Process Clause and 8 C.F.R. § 241.4(1). (Doc. 1 at 27). If Mr. Bayard is deported, it is likely that the Court would be deprived of the ability to provide meaningful relief, as there would be no meaningful remedy available. *See Soliman v. United States*, 296 F.3d 1237, 1242 (11th Cir. 2002). That is sufficient irreparable harm to support the issuance of a TRO.

### D. The Balance of Equities and Public Interest Favors Enjoining Respondents

When the government is the opposing party, the third and fourth factors—the balance of equities and public interest—merge together. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, granting the TRO serves the public interest because it ensures that federal agencies must comply with their own regulations

and prevents them from taking action that runs afoul of the Due Process Clause. Additionally, the severe and impending harm to Mr. Bayard far outweighs any potential harm to Respondents. There is nothing in the record suggesting that he has violated his release conditions. Mr. Bayard has been living in the United States for over twenty-seven years. There is nothing to suggest that Respondents would be harmed by any delay in Mr. Bayard's deportation caused by the Court's issuance of a TRO.

## IV. Conclusion

Accordingly, it is **ORDERED** that:

1. Petitioner's emergency motion for a temporary restraining order (Doc. 2) is **GRANTED in part** and **DENIED in part**.

2. Respondents and each of their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with any of them who receive actual notice of this order, are **RESTRAINED AND ENJOINED** from removing or attempting to remove Petitioner and from taking any other action to execute Petitioner's removal until further order of this court.

3. Respondents shall respond to the Motion and the Petition for Habeas Corpus by November 24, 2026, and show cause why the court should not grant the petition and issue a preliminary injunction.

4. This matter is **SET** for an evidentiary hearing on **Monday, November 30, 2026, at 1:00 p.m.** in Courtroom 6B of the Orlando Federal Courthouse.

5. The Clerk of Court is **DIRECTED** to serve a copy of this Order, the petition (Doc. 1), and the TRO Motion (Doc. 2) on all counsel of record via CM/ECF and to transmit a copy by email to: USAFLM.Orlando2241@usdoj.gov; OPLAORLFEDLIT@ice.dhs.gov; and Miami.Outreach@ice.dhs.gov.

6. Service of this Order via CM/ECF on Respondents' counsel of record shall constitute notice sufficient to bind all officers, agents, servants, and employees of Respondents within the meaning of Fed. R. Civ. P. 65(d)(2).

7. The motion is otherwise **DENIED**.

**ORDERED** in Orlando, Florida on November 20th, 2026 at 4:02 p.m.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record